IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JONATHAN L. SUMRALL,

    Petitioner,                      No. 2: 11-cv-1253 KJN P

    vs.

GARY SWARTHOUT,

    Respondent.             ORDER

_____/

I. <u>Introduction</u>

        Petitioner is a state prisoner, proceeding without counsel, with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Both petitioner and respondent have consented to the jurisdiction of the undersigned. (Dkt. Nos. 4, 11.)

        Petitioner challenges his 2009 conviction for sale of cocaine base (Cal. Health & Saf. Code § 11352(a)), with one prior serious felony conviction and two prior prison terms (Cal. Penal Code §§ 667(b)-(i) and 667.5(b)). Petitioner is serving a sentence of nine years.

        This action is proceeding on the original petition filed May 11, 2011. Petitioner raises the following claims: 1) prosecutorial misconduct; and 2) ineffective assistance of counsel. After carefully reviewing the record, the undersigned orders the petition denied.

////

II. Standards for a Writ of Habeas Corpus

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). A federal writ is not available for alleged error in the interpretation or application of state law. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000).

Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under section 2254(d)(1), a state court decision is "contrary to" clearly established United States Supreme Court precedents if it applies a rule that contradicts the governing law set forth in Supreme Court cases, or if it confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at different result. Early v. Packer, 537 U.S. 3, 7 (2002) (citing Williams v. Taylor, 529 U.S. 362, 405-06 (2000)).

Under the "unreasonable application" clause of section 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. Williams, 529 U.S. at 413. A federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 412; see also Lockyer v. Andrade, 538 U.S. 63, 75

2

(2003) (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'") (internal citations omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 131 S. Ct. 770, 786 (2011).

The court looks to the last reasoned state court decision as the basis for the state court judgment. Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002). If there is no reasoned decision, "and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Harrington, 131 S. Ct. at 784-85. That presumption may be overcome by a showing that "there is reason to think some other explanation for the state court's decision is more likely." Id. at 785 (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)).

Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, the federal court conducts an independent review of the record. "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). Where no reasoned decision is available, the habeas petitioner has the burden of "showing there was no reasonable basis for the state court to deny relief." Harrington, 131 S. Ct. at 784. "[A] habeas court must determine what arguments or theories supported or, . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." Id. at 786.

////
////
////

III. <u>Background</u>

The opinion of the California Court of Appeal contains a factual summary of petitioner's offense. After independently reviewing the record, the undersigned finds this summary to be accurate and adopts it herein:

> In April 2008, detectives from the narcotics suppression unit conducted an undercover buy-bust operation in the area of 44th Avenue and Martin Luther King, Jr. Boulevard, an area known for high drug and gang activity. In the operation, an undercover officer is given prerecorded funds to make a buy. Once the buy is made, the undercover officer relays the information to the case agent through a one-way monitoring device. He describes the subjects for the arrest team. The arrest team takes a picture of each subject for the undercover officer to identify.
>
> Brandon Luke served as the undercover officer. He drove down 44th Avenue and saw two Black males on bikes, defendant and Raymond Weber. He asked them "What's up with it?" Defendant asked Luke what he wanted and Luke replied, "a dub of cream," which is street slang for $20 worth of rock cocaine.
>
> Defendant said he did not have it on him, but his "kid" did and then said, "there goes my son." Defendant rode his bike up to and around Anthony Blake, who handed defendant something. Defendant rode his bike to a driveway. Weber directed Luke to the driveway where defendant was waiting. Defendant took out a rock and put it in Luke's hand. Luke gave defendant a $20 prerecorded bill.
>
> As defendant and Weber went to Blake's location, Luke advised the monitoring case agent over the transmitter that the transaction was complete. The rock defendant gave Luke was .36 grams of cocaine base.
>
> Anthony Turnbull, on the arrest team, got the information that the buy was completed and a description of the suspect. He saw defendant and approached. Blake began to walk away. Defendant was sitting on some stairs; when Turnbull identified himself as an officer, defendant stood and dropped money between the steps. Turnbull retrieved the money; it was a $20 bill that matched the serial number of one of the prerecorded bills.
>
> Luke met with the case agent for the operation and viewed photographs of the three men detained, defendant, Blake and Weber. He identified them as the men involved in the buy. He identified defendant as the seller at trial.

////

Blake testified for the defense, claiming he was the sole responsible party for the drug sale. That day he was in the area of 44th Avenue selling drugs, specifically rock cocaine. He met defendant and gave him a cigarette and "some love." Then, Blake sold drugs to a man in a car. Blake was vague about the transaction; he could not recall how exactly it happened. He could not remember if the buyer handed him money or if he (Blake) had other money. Blake did not address disposing of the recorded $20 bill. He claimed the buyer said nothing; Blake just knew he wanted drugs. Defendant was on or near the stairs when the sale took place.

In a declaration that Blake had signed earlier, Blake stated the buyer walked up to defendant and said something. At trial, Blake claimed that was incorrect.

Blake had met defendant when he was young, 11, 12, or 13 years old. He was 19 at the time of the sale. When Blake got out of a group home at age 18, defendant lent him some money to help him out; defendant gave Blake his number and told Blake he would look out for him. Blake did not come forward earlier because he was ashamed he had lied to defendant about selling drugs and he was scared. Blake explained that when he got out of custody, "I was referred that I should call the number and say what happened, say what really happened." He called and was later told to come to the office of defendant's counsel.

The prosecutor asked Blake about his case being dismissed and if he understood that the district attorney could not file charges against him. Blake testified he did not know charges could not be filed and he thought that was what was happening now, determining whether he would go to jail. He replied yes when asked if he was willing "to take the fall." When Blake was dismissed as a witness, he asked if he was going to jail.

(Dkt. No. 12-1 at 3-5 of 11.)

IV. <u>Discussion</u>

Petitioner alleges that the prosecutor committed misconduct during closing argument when she stated that the District Attorney's Office was legally precluded from prosecuting Anthony Blake for the sale of rock cocaine. Petitioner also argues that the prosecutor improperly "vouched" for Anthony Blake's unreliability by arguing that the District Attorney's Office would not bring charges against Anthony Blake even if they could because they knew he was lying. In a related claim, petitioner alleges that counsel was ineffective for

5

failing to object to the alleged prosecutorial misconduct and for failing to request a curative admonition.

    A. Background

The California Court of Appeal denied petitioner's claims of prosecutorial misconduct and ineffective assistance of counsel for the reasons stated herein:

> In closing argument, the defense discussed Blake's testimony and noted Blake thought he would be arrested after he testified. The defense argument stressed reasonable doubt and whether the police could have made a mistake as to the identity of the seller.
>
> In rebuttal, the prosecutor argued Blake knew his case was dismissed. She argued: "Now, I don't know how many of you might watch legal TV shows, but there's something called One Bite at the Apple. And I didn't ask him questions about this, about whether or not he knew what One Bite at the Apple meant. Maybe not everyone knows that. [¶] But the D.A. can only prosecute you once for something, and you only get time for something once. [¶] And he wants us to believe that he thought he was going to come in here and get arrested. No. [¶] And we know he's not telling the truth. That's why he's not being arrested anyway, even if we could bring him up on charges for testifying."
>
> On appeal, defendant contends this argument was prosecutorial misconduct because the prosecutor misstated the facts and the law as to whether Blake could be prosecuted. There was no evidence of a prior prosecution or other legal impediment to prosecuting him and no evidence that Blake knew a prosecution was barred. Defendant urges this misconduct was prejudicial because it weakened Blake's credibility which was the key to the defense case. Defendant further contends the prosecutor improperly vouched for Blake's lack of credibility by saying "we know" Blake was not telling the truth. (See United States v. Younger (9th Cir. 2005) 398 F.3d 1179, 1191 ["We do not condone the prosecutors' use of 'we know' statements in closing argument, because the use of 'we know' readily blurs the line between improper vouching and legitimate summary"].) FN2
>
> FN2. While we agree the prosecutor's "one bite" argument was improper, we reject the contention that the prosecutor's use of "we know" in closing argument was misconduct. The use of "we know" in the People's closing argument "is only improper when it suggests that the government has special knowledge of evidence not presented to the jury, carries an implied guarantee of truthfulness or expresses a personal opinion about credibility. [Citation.]" (United States v. Bentley (8th Cir. 2009) 561 F.3d 803, 812.) Use of "we know" is not improper when used, as here, to

refer to the People's evidence and to summarize the People's case. (Ibid.)

The People agree that the prosecutor misspoke in her "one bite of the apple" statements. The People contend, however, that defendant has forfeited the contention by failing to object below.

"'To preserve a claim of prosecutorial misconduct for appeal, a criminal defendant must make a timely objection, make known the basis of his objection, and ask the trial court to admonish the jury.' [Citation.] There are two exceptions to this forfeiture: (1) the objection and/or the request for an admonition would have been futile, or (2) the admonition would have been insufficient to cure the harm occasioned by the misconduct. Forfeiture for failure to request an admonition will also not apply where the trial court immediately overruled the objection to the alleged misconduct, leaving defendant without an opportunity to request an admonition. A defendant claiming that one of these exceptions applies must find support for his or her claim in the record. [Citation.] The ritual incantation that an exception applies is not enough." (People v. Panah (2005) 35 Cal.4th 395, 462.)

Defendant contends an admonition to disregard the prosecutor's remarks would not have cured the error and would have served only to reinforce the improper argument. We disagree, particularly because the challenged argument had no support in the record. If defendant had objected on the basis that the argument misstated the facts or the law or both, the trial court would have sustained the objection, clearly indicating to the jury that the argument was improper. Defendant has failed to show an admonition would not have cured the harm. The failure to object and request a curative admonition forfeits the claim of prosecutorial misconduct. (People v. Prince (2007) 40 Cal.4th 1179, 1275.)  Further, as discussed below, defendant has failed to show the improper argument was prejudicial.

Defendant contends his trial counsel's failure to object to the rebuttal argument was ineffective assistance of counsel. He contends there could be no rational tactical reason for failing to object and the unfair attack on Blake's credibility was prejudicial.

"A defendant seeking relief on the basis of ineffective assistance of counsel must show both that trial counsel failed to act in a manner to be expected of reasonably competent attorneys acting as diligent advocates, and that it is reasonably probable a more favorable determination would have resulted in the absence of counsel's failings. [Citations.]" (People v. Price (1991) 1 Cal.4th 324, 440; see also Strickland v. Washington (1984) 466 U.S. 668, 687-688.) "Reviewing courts defer to counsel's reasonable tactical decisions in examining a claim of ineffective assistance of counsel [citation], and there is a 'strong presumption that counsel's conduct falls

1  within the wide range of reasonable professional assistance.'
   [Citation.]" (People v. Lucas (1995) 12 Cal.4th 415, 436-437.) "On
2  a direct appeal a conviction will be reversed for ineffective
   assistance of counsel only when the record demonstrates there
3  could have been no rational tactical purpose for counsel's
   challenged act or omission. [Citations.]" (People v. Mesa (2006)
4  144 Cal.App.4th 1000, 1007-1008.)

5  Here, the record is silent as to why counsel failed to object to the
   challenged argument, but nothing in the record suggests that
6  counsel lacked a strategic purpose for failing to object. Counsel
   may have believed an objection was unnecessary because Blake
7  sufficiently established that, whatever the law, he believed he could
   still be prosecuted. The prosecutor offered no evidence to the
8  contrary; during cross-examination, she was unsuccessful in
   getting Blake to concede he knew he could not be prosecuted. She
9  admitted she had not asked Blake about the "one bite" rule. Blake
   maintained he believed he faced prosecution and jail even as he
10 was dismissed from testifying. The decision whether to object is
   inherently tactical, and the failure to object will rarely establish
11 ineffective assistance. (People v. Hillhouse (2002) 27 Cal.4th 469,
   502.)
12
   Moreover, defendant has failed to affirmatively show prejudice.
13 "'It is not enough for the defendant to show that the errors had
   some conceivable effect on the outcome of the proceeding.... The
14 defendant must show that there is a reasonable probability that, but
   for counsel's unprofessional errors, the result of the proceeding
15 would have been different. A reasonable probability is a probability
   sufficient to undermine confidence in the outcome.' [Citations.]
16 Specifically, 'When a defendant challenges a conviction, the
   question is whether there is a reasonable probability that, absent
17 the errors, the factfinder would have had a reasonable doubt
   respecting guilt....' [Citation.]" (People v. Ledesma (1987) 43
18 Cal.3d 171, 217-218.)

19 The case against defendant was strong. Three detectives supplied
   compelling, detailed testimony that defendant sold cocaine base.
20 Luke identified defendant's picture immediately after the sale and
   defendant bore no resemblance to Blake. Luke again identified
21 defendant as the seller at trial and the prerecorded $20 bill was
   recovered from under the stairs, where defendant threw it just
22 before he was arrested.

23 Defendant contends the case was a credibility contest and the
   prosecutor's improper argument harmed Blake's credibility,
24 imputing to him a motive to lie because he could do so without fear
   of prosecution. Blake's credibility, however, was already suspect.
25 In contrast to the detectives' detailed testimony about the sale,
   Blake was vague and unable to provide any details or explain how
26 the $20 prerecorded bill ended up under the stairs. His credibility

> was further challenged when he changed his story from his earlier declaration. Blake's relationship with defendant, who served as a father figure and protector, gave defendant ample motive to lie for defendant. Blake's testimony suggested he came forward only after he was instructed to do so.
>
> Defendant has failed to show a reasonable probability that, but for counsel's failure to object to the rebuttal argument, the result of the proceeding would have been different. His claim of ineffective assistance of counsel fails.

(Dkt. No. 12-1 at 5-11 of 11.)

### B. Alleged Prosecutorial Misconduct

In the answer, respondent argues that petitioner's prosecutorial misconduct claim is procedurally barred. In support of this argument, respondent contends that the California Court of Appeal imposed an adequate and independent state procedural bar based on petitioner's failure to object to the alleged prosecutorial misconduct.

To determine whether petitioner's prosecutorial misconduct claim is procedurally barred, the undersigned looks to the opinion of the California Court of Appeal because it is the last reasoned state court opinion. Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991); respondent's lodged document 8 (order by California Supreme Court denying petition for review); lodged document 12-1 (opinion by California Court of Appeal affirming conviction).

Under the doctrine of procedural default, a petitioner who has defaulted on his claims in state court is barred from raising them in federal court so long as the default is "pursuant to an independent and adequate state procedural rule." Coleman v. Thompson, 501 U.S. 722, 750 (1991). In Bennett v. Mueller, 322 F.3d 573 (9th Cir. 2003), the Ninth Circuit adopted a burden-shifting analysis to determine adequacy. Under this analysis, the state may plead, as an affirmative defense, that the petitioner's failure to satisfy a state procedural bar should foreclose federal review. Id. at 586. Once the state pleads the bar, the burden shifts to the petitioner to challenge the adequacy of that bar by showing that it has been inconsistently applied. Id. The state has the ultimate burden of proving adequacy. Id.

In the instant case, petitioner offers no argument that the timely or contemporaneous objection rule invoked by the California Court of Appeal was not an adequate and independent basis for its decision. In any event, it is established under California law that a defendant must make a timely objection at trial and request an admonition of the jury to preserve for appeal a claim of prosecutorial misconduct. People v. Najera, 138 Cal.App.4th 212, 224 (2006). In Vansickel v. White, 166 F.3d 953, 957-58 (9th Cir. 1999), the Ninth Circuit held that California's contemporaneous objection rule was sufficiently independent and adequate to find a federal claim procedurally defaulted.

Accordingly, petitioner's prosecutorial misconduct claim is procedurally barred unless he can demonstrate 1) cause for his failure to raise the objection at trial and prejudice accruing from the error; or 2) that a fundamental miscarriage of justice will result in the absence of review. Bennett v. Mueller, 322 F.3d 573, 580 (9th Cir. 2003).

For the reasons stated by the California Court of Appeal addressing petitioner's related ineffective assistance of counsel claim, the undersigned finds that petitioner has not demonstrated prejudice accruing from the alleged prosecutorial misconduct.[1] As noted by the

---

[1] The opinion of the California Court of Appeal did not quote the entire at-issue argument. Accordingly, it is set forth herein:

> Now, on Blake's testimony. Mr. Tejada wants us to believe that Mr. Blake came here out of the kindness of his heart and thought he needed to come in here and take the wrap [sic] for everything. And he thought he was going to go to jail. He honestly believed he was going to go to jail.
>
> He knows his case was dismissed. He told us on the stand his case was dismissed.
>
> Now, I don't know how many of you might watch legal TV shows, but there's something called One Bite at the Apple. And I didn't ask him questions about this, about whether or not he knew what One Bite of the Apple meant. Maybe not everybody knows that.
>
> But the D.A. can only prosecute you once for something, and you only get time for something once.

And he wants us to believe that he thought he was going to come in here and get arrested. No.

And we know he's not telling the truth. That's why he's not being arrested anyway, even if we could bring him up on charges for testifying.

(RT at 259-60.)

In the petition, petitioner cites the following portions of Blake's testimony regarding his knowledge of whether he would be prosecuted:

Q: Now you said that when you were at juvenile hall, your case was dismissed at juvenile hall, right?

A: Yes.

Q: That means the D.A. can't file against you now. Right?

A: Yes.

\*\*\*

Court: Do you believe the D.A could file charges against you regarding this incident?

A: I knew that, yes.

Q: So you know that the D.A. cannot file charges against you?

A: Cannot?

Q: That's right.

A: I didn't know that.

\*\*\*

Q: What's your understanding? Do you know that the D.A.'s office cannot file charges against you now?

A: I thought that's what I'm going through right now, whether I'm going to go to jail or not, now.

Q: Well, you know that you are not charged right now. Right?

A: They're going to charge me. Right?

11

1   California Court of Appeal, the case against petitioner was strong.  Three detectives testified that
2   petitioner sold cocaine base.  Petitioner was seen throwing away the marked $20 bill.  Anthony
3   Blake's testimony was not credible.  Based on this strong evidence, the undersigned does not find
4   that the outcome of the trial would have been different had the prosecutor not made the alleged
5   improper arguments during her closing argument.  For these same reasons, the undersigned finds
6   that petitioner has not demonstrated that a fundamental miscarriage of justice will accrue in the
7   absence of review.

8   　　　　　Even if petitioner's prosecutorial misconduct claim was not procedurally barred, it
9   would be rejected on the merits for the reasons stated herein.

10  　　　　　In evaluating a claim that a prosecutor engaged in misconduct during closing
11  argument, the court must determine whether the prosecutor's comments "so infected the trial
12  with unfairness as to make the resulting conviction a denial of due process."  Darden v.
13  Wainwright, 477 U.S. 168, 181 (1986).  Under Darden, the first issue is whether the prosecutor's
14  remarks or conduct were improper; if so, the next question is whether such remarks or conduct
15  infected the trial with unfairness.  Tak Sun Tan v. Runnels, 413 F.3d 1101, 1112 (9th Cir. 2005).
16  Such unfairness exists where the court concludes that the prosecutorial misconduct had a
17  "substantial and injurious effect or influence in determining the jury's verdict."  Shaw v.
18  Terhune, 380 F.3d 473, 478 (9th Cir. 2004).  Misconduct claims are reviewed in light of the
19  entire trial record.  See Donnelly v. DeChristoforo, 416 U.S. 637, 639 (1974).

20  　　　　　While the prosecutor's "one bite at the apple" argument was improper, it did not
21  have a substantial and injurious effect influencing the jury because the evidence against

---

23  　　　Q: Is that what you think?
    　　　A: I'm thinking that's what's going to happen.  That's what I think
24  　　　　is going to happen.
25  (RT at 215-17.)

petitioner was strong.  Moreover, the jury was instructed that nothing that the attorneys say is evidence.  (CT at 122.)   The jury was also instructed that in deciding the case, they must only use the evidence that was presented in the courtroom, which included sworn testimony of witnesses, exhibits admitted into evidence and anything else the judge told them was evidence. (Id.)  Based on these instructions, the jury should have known that the prosecutor's "one bite at the apple" argument was not evidence.  Jurors are presumed to follow their instructions. Richardson v. Marsh, 481 U.S. 200, 206 (1987).

For the reasons stated by the California Court of Appeal, the undersigned also finds that the prosecutor's argument that "we know" Blake is not telling the truth was not misconduct.  As noted by the California Court of Appeal, the prosecutor's argument did not suggest that she had special knowledge regarding Blake's veracity.  In referring to "we," the prosecutor was clearly referring to the jury rather than District Attorney's office.  As such, this argument was not improper.

For the reasons discussed above, petitioner's prosecutorial misconduct claim is procedurally barred.  In the alternative, this claim is without merit.

### C. Alleged Ineffective Assistance of Counsel

The California Court of Appeal addressed the merits of petitioner's ineffective assistance of counsel claim.

*Legal Standard*

The Sixth Amendment guarantees the effective assistance of counsel.  The United States Supreme Court set forth the test for demonstrating ineffective assistance of counsel in Strickland v. Washington, 466 U.S. 668 (1984).  To support a claim of ineffective assistance of counsel, a petitioner must first show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness.  Id. at 687-88.  After a petitioner identifies the acts or omissions that are alleged not to have been the result of reasonable professional judgment, the court must determine whether, in light of all the circumstances, the

identified acts or omissions were outside the wide range of professionally competent assistance. Id. at 690; Wiggins v. Smith, 539 U.S. 510, 521 (2003).

Second, a petitioner must establish that he was prejudiced by counsel's deficient performance. Strickland, 466 U.S. at 693-94. Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id.; see also Williams, 529 U.S. at 391-92; Laboa v. Calderon, 224 F.3d 972, 981 (9th Cir. 2000). The court need not address both components if petitioner makes an insufficient showing on one. Strickland, 466 U.S. at 697. As both prongs of the Strickland test must be satisfied to establish a constitutional violation, failure to satisfy either prong requires that an ineffective assistance claim be denied. See id., 466 U.S. at 697 (no need to address deficiency of performance if prejudice is examined first and found lacking); Rios v. Rocha, 299 F.3d 796, 805 (9th Cir. 2002) ("[f]ailure to satisfy either prong of the Strickland test obviates the need to consider the other").

In other words, a reviewing court is not required to address the two parts of the Strickland test in its ruling. See Strickland, at 697. As the Court stated in Strickland:

> In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result.

Id. "Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, [petitioner] must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." Kimmelman v. Morrison, 477 U.S. 365, 375 (1986).

14

In Harrington, the Supreme Court emphasized the application of Strickland to ineffective assistance of counsel claims and its relationship to § 2254(d)'s deferential standard of review. Id., 131 S. Ct. at 770. "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable[,]" which is a different question from "asking whether defense counsel's performance fell below *Strickland's* standard." Harrington, 131 S. Ct. at 785.

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," . . . and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

Harrington, 131 S. Ct. at 788 (citations omitted).

In assessing an ineffective assistance of counsel claim "[t]here is a strong presumption that counsel's performance falls within the wide range of professional assistance." Kimmelman, 477 U.S. at 381 (citation omitted). Additionally, there is a strong presumption that counsel "exercised acceptable professional judgment in all significant decisions made." Hughes v. Borg, 898 F.2d 695, 702 (9th Cir. 1990) (citation omitted).

*Analysis*

The California Court of Appeal is the last state court to issue a reasoned decision addressing the merits of petitioner's ineffective assistance of counsel claim. (Respondent's Lodged Document 8; Dkt. No. 12-1.)

The finding by the California Court of Appeal that petitioner's ineffective assistance of counsel claim was without merit was not an unreasonable application of clearly established Supreme Court authority. Based on the strength of the case against petitioner, the California Court of Appeal reasonably found that there was no reasonable probability that the outcome of the trial would have been different but for counsel's failure to object to the alleged

1  prosecutorial misconduct.  Because petitioner failed to demonstrate prejudice, the California

2  Court of Appeal correctly denied this claim.  Accordingly, this claim is denied.[2]

3         Accordingly, IT IS HEREBY ORDERED that:

4      1. Petitioner's application for a petition for writ of habeas corpus is denied; and

5      2. A certificate of appealability is not issued.  28 U.S.C. § 2253(c)(3).

6  DATED: January 26, 2012

              _____
              KENDALL J. NEWMAN
              UNITED STATES MAGISTRATE JUDGE

10  sum1253.hab

---

[2] The California Court of Appeal also found that petitioner failed to demonstrate that counsel acted unreasonably in failing to object.  The California Court of Appeal stated that counsel may have had tactical reasons for failing to object.  The undersigned is less persuaded by this analysis but need not address it, as it is clear that petitioner failed to demonstrate the prejudice prong of the Strickland test.